**SO ORDERED.**

**SIGNED this 11 day of December, 2009.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JOSEPH AARON KRAHN and | ) | Case No. 08-41285 |
| KERRI KRISTINE KRAHN, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER GRANTING
### TRUSTEE'S MOTION FOR TURNOVER

This matter is before the Court on the Trustee's Motion for Turnover.[1]  The Trustee seeks

an order compelling Debtors to turnover the estate's portion of their 2008 tax refunds.  Debtors agree

that they must turn over the estate's portion of their refunds, but disagree with the Trustee on how

that amount should be calculated.

This is a core proceeding over which this Court has jurisdiction to enter a final order.[2]

## I.    FINDINGS OF FACT

_____

[1]Doc. 30.

[2]28 U.S.C. § 157(b)(1)(jurisdiction to hear core proceedings) and § 157(b)(2)(E)) (orders for turnover of property of the estate are core proceedings) and 28 U.S.C. § 1334.

The parties have stipulated to the relevant facts,[3] while agreeing that additional facts may be presented by affidavit. The Court adopts the stipulations set forth by the parties, as well as the facts set forth in the affidavits submitted with Debtors' response to the motion for turnover. With those stipulations and affidavits, the Court makes the following findings of fact.

Debtors filed a petition seeking relief under Chapter 7 on August 29, 2008. Debtors' 2008 federal tax return showed no tax liability, but $6,916.00 in refundable credits. Those refundable credits included earned income credits of $4,216, additional child tax credits of $1,632.00 and excess withholdings of $1,068.

After IRS made an adjustment, it refunded to Debtors $6,149.00 on February 13, 2009. Debtors' 2008 state tax return showed a $232.00 tax liability, but refundable credits of $1,291.00. The refundable credits included earned income credits of $717.00, a food sales tax refund of $156.00, and excess withholdings of $418.00. The Kansas Department of Revenue issued Debtors a refund of $684.00[4] on July 9, 2009. Debtors properly turned all the refunds over to their counsel, who holds all the refunds in trust pending Court order.

The petition date of August 29, 2008 was the 242nd day of 2008, a year with 366 days due to it being a leap year. For the entire year of 2008, Debtors earned gross income of $19,379.00. As of August 2, Mr. Krahn had earned gross wages of $2,1720.72 and as of August 22, Mrs. Krahn had earned gross wages of $11,196.51. On September 26, 2008 (approximately one month after the petition was filed), Mr. Krahn was involved in an accident and remained hospitalized through the

---

[3]Doc. 39.

[4]The parties do not address why the federal refund was reduced, and indicate they do not know why the state refund was reduced.

2

remainder of 2008. As a result of the accident and hospitalization, Mr. Krahn was unable to work until at least the end of 2008. At the time the petition was filed, Debtors had one child. However, their second child was born December 2, 2008, approximately three months following the filing of the petition.

The Trustee originally sought turnover of $4,810.25 of the 2008 tax refunds for the bankruptcy estate. However, after taking into account the refunds actually paid by the IRS and the Kansas Department of Revenue, the Trustee has revised his claim to seek turnover of $4,055.15. Debtors' tax refund is subject to an income tax assignment to Debtors' attorney in the amount of $700, which the Court assumes has been accounted for by the Trustee, resulting in a <u>net</u> turnover demand of $4,055.15.[5]

The Trustee based his calculation of the estate's portion of Debtors' tax refund by using a straight pro-rata distribution based upon the filing date. He contends that roughly 66% of the refunds constitute a pre-petition asset of the estate (242/366) and 34% of the refunds constitute Debtors' post-petition property (124/336). Debtors claim that the Court should not base the estate's portion of the earned income tax credit or the child tax credit resulting from Debtors' second child on a pro-rata calculation, but should instead find that 100% of those portions of the tax refunds should be considered post-petition property based upon the stipulated facts. Specifically, Debtors claim that if not for the post-petition accident by Mr. Krahn, they would not have qualified for the earned income credit, so it should be considered a post-petition asset. As for the additional child tax credit

---

[5] Debtors do not suggest that the Trustee has failed to account for this assignment, and the Trustee's calculations of the original demand, set forth on Doc. 45, indicate that the net amount of the demand, after allowing for the $700 assignment, is $4,055.15. If this is incorrect, the Court requests Debtors file an immediate motion for reconsideration solely on that factual issue.

attributable to the post-petition birth of their second child, Debtors claim that because the child was born post-petition, the refund attributable to the second child should be considered a post-petition asset, as well.

## II.   ANALYSIS

The Trustee seeks turnover of what he contends is the estate's portion of Debtors' 2008 tax refunds.  The Trustee has the burden of proving what property belongs to, and therefore has to be turned over to, the estate.[6]  Debtors' tax refund is comprised of several different components, including the overpayment of wage withholdings, earned income tax credits, additional child tax credits, and a food sales tax refund that is part of the state refund.  At issue in this case is how to calculate the estate's portion of the earned income tax credit and the additional child tax credit, and whether the food sales tax refund can be claimed exempt.

The Trustee contends that the estate's portion should be calculated using a simple calendar-day proration, dividing the refund into pre-petition and post-petition portions based upon that pro-rata calculation.  Under these facts, the parties agree the estate is entitled to 66.1% of the tax refunds. Debtors, however, contend the Court should look at two post-petition events ( accident by Mr. Krahn that left him unable to work several months in 2008 and the birth of a child) when deciding which portion of the refunds should be attributable to the estate.

### A.   Earned Income Tax Credit

---

[6]*In re Lee*, 415 B.R. 518, 523 (Bankr. D. Kan. 2009) (citing *In re Amdura Corp*, 75 F.3d 1447, 1451 (10th Cir. 1996).

4

The Trustee's basis for requesting turnover of a straight pro-ration of the tax refunds centers on the Tenth Circuit Court of Appeals decision in *In re Montgomery*.[7]  In *Montgomery*, the Tenth Circuit explained that

> The EIC [earned income credit] program allows a percentage of the income of a qualifying individual as a credit against the tax otherwise owed for a taxable year. *See* I.R.C. § 32. Congress made EICs available to qualifying low income earners in order to reduce the disincentive to work caused by the imposition of Social Security taxes on earned income (welfare payments are not similarly taxed), to stimulate the economy by funneling funds to persons likely to spend the money immediately, and to provide relief for low-income families hurt by rising food and energy prices. If the amount of an individual's EIC exceeds his tax liability, the excess is considered an overpayment of tax under I.R.C. § 6401, and is refunded to the individual under I.R.C. § 6402 "as if he had overpaid his tax in that amount." In addition, an individual eligible to receive EICs may obtain advance payment of a portion of the amount as part of his wages. *See* I.R.C. § 3507.[8]

In *Montgomery*, the bankruptcy court had held that because the Earned Income Tax Credit (EIC) does not accrue until the end of the year, it is a contingent interest and does not become property of the estate if the debtor files bankruptcy before the end of the year.  The Bankruptcy Appellate Panel reversed the bankruptcy court, finding the credit was property of the estate.[9]  The Tenth Circuit affirmed the BAP's decision and held that "[g]iven that EICs are to be treated as tax refunds, and that contingent interests are to be included in the bankruptcy estate, we agree with the BAP and the overwhelming weight of authority that a debtor's EIC for a tax year, <u>as pro-rated to the date the bankruptcy petition was filed</u>, is property of the estate regardless of whether the petition was filed prior to the end of the tax year."[10]

---

[7]224 F.3d 1193 (10th Cir. 2000).

[8]*Id*. at 1194 (internal citations omitted).

[9]219 B.R. 913 (10th Cir. BAP 1998).

[10]*Id*. at 1195 (emphasis added).

5

Alternatively, Debtors urge the Court to follow, but only in part, a recent decision by Judge Somers, *In re Lee*,[11] and hold that a strict pro-rata division of the EIC is not required and that individualized circumstances may lead to a different allocation of those refunds. In *Lee*, because the debtor had earned significantly more income after the filing of her petition than she had earned pre-petition, the court elected to deviate from the pro-rata method of dividing refunds. In *Lee*, the court crafted a mathematical equation that attributed the debtor's EIC based upon the percentage of her 2008 income that she earned pre-petition and post-petition, rather than basing it on the date she filed her case.[12]

Debtors do not ask the Court to adopt the methodology used in *Lee*, in full. Instead, Debtors argue that applying the actual computations from *Lee* in this case would be "difficult" because Debtors earned more income pre-petition than they did post-petition. The Court finds that applying *Lee* would not be any more difficult in this case than it was in *Lee*; Debtors simply do not like the result of applying the *Lee* formula to their facts, since it would require a significantly larger turnover to the estate than the Trustee seeks.[13] In other words, what worked in the debtor's favor in *Lee* (by providing the estate less than what it would have received under a pro-rata division) would work in the estate's favor in this case (by providing it with more than it would receive under a pro-rata division) because of the timing of the bankruptcy filing.

---

[11]415 B.R. 518 (Bankr. D. Kan. 2009).

[12]*Id*. at 526-27.

[13]The Court notes that these Debtors are represented by the same counsel as the debtor in *Lee,* and that there, Counsel took a different position than he does here because the *Lee* formula harms the Krahns under the facts of their case. In *Lee*, he argued that debtor's EIC should be divided according to the fraction of her total income for the tax year that she had earned before she filed for bankruptcy.

6

For this reason, the Krahns advocate a different approach here. They argue that they would not have been entitled to receive any EIC in 2008 were it not for the disabling accident suffered by Mr. Krahn approximately one month after the petition was filed. According to Debtors, had he not been in the accident, he would theoretically have earned income in excess of the amount needed to qualify for the EIC.

As Judge Somers explained more fully in *Lee*, the EIC is calculated on a sliding scale. The credit increases as individuals earn more money throughout the year, but only to a point, and then the credit begins to diminish after those individuals begin to earn more money.[14] Debtors contend that if not for the accident, they would have earned too much money to qualify for the EIC, as evidenced by the fact they did not receive the EIC in 2006 or 2007, years in which Mr. Krahn presumably worked the entire year, and presumably at the same wages (although neither of these facts are in this record by stipulation or otherwise).

The Court finds that the pro-rata method advocated by the Trustee is the proper way to divide the EIC portion of the tax refund. First, the Court respectfully disagrees with Judge Somers, finding that the Tenth Circuit Court of Appeals has established the method to allocate the EIC in *Montgomery*, and that it is thus bound by that decision. In that case, the court specifically noted that the EIC credit "as pro-rated to the date the bankruptcy petition was filed," constituted property of the estate.[15] Further, even if the Court were to look beyond the date of filing, the Court finds that

---

[14]*Id.* at 526. The Tenth Circuit's decision was driven by the Supreme Court's holding in *Sorenson v. Sec'y of the Treasury of the United States*, 475 U.S. 851, 859 (1986) that the fact the federal earned income tax credit is refundable makes it inseparable from its classification as an overpayment of tax.

[15]Note that a different result may occur when dealing with overpayments of income taxes through wage withholdings or estimated taxes paid by debtors. As explained in *Christie v. Royal (In re Christie)*, 233 B.R. 110 (10th Cir. BAP 1999), when the tax refund is based upon overpayments by a debtor, that portion of the overpayment that was made pre-petition should be considered property of the estate, while that portion of the overpayment that

7

Debtors' arguments that the EIC should be considered their property because they would not have received that credit were it not for the post-petition accident ignores how the EIC is calculated.

To qualify for the EIC, Debtors were required to earn a certain amount of income. That income, which was earned mostly pre-petition, played just as much of a role in qualifying them for the EIC as the fact they did not earn as much money post-petition. In other words, although it is true they may not have qualified for the EIC were it not for the loss of income due to the post-petition auto accident, it is equally as true that they would not have qualified for the EIC were it not for the pre-petition income they did earn. This fact pattern exposes the difficulties in trying to allocate the EIC on anything other than a pro-rata basis.

### B.     Additional Child Tax Credit

Debtors next contend that the estate should not share in any portion of the additional child tax credit that was attributable to their second child, who was born post-petition. According to Debtors, because this child was born post-petition, any additional child tax credits attributable to that child should be excluded from the property of the estate.

*In re Landgrebe,*[16] a recent bankruptcy case from Colorado, describes the child tax credit available to taxpayers under the Internal Revenue Code, as follows:

> In this case, section 24 of the Internal Revenue Code [26 U.S.C. § 24] defines the federal child tax credit. The credit allows parents with an adjusted gross income below a threshold amount to claim a tax credit of $1,000 for each qualifying child. The credit has two distinct parts: a non-refundable component denominated on Form 1040 (line 52) as the "Child tax credit" and a refundable component denominated on

---

occurred post-petition is not property of the estate. In *Christie*, 100% of the refund was attributable to money debtors had earned after they filed for bankruptcy and from money loaned from a relative. However, *Christie* specifically noted that "[t]his situation must be distinguished from a tax refund arising from the [EIC], which refunds to qualifying taxpayers money they did not pay to the IRS." *Id* at 113, n.2.

[16]2009 WL 3253933 (Bankr. D. Colo. 2009).

Form 1040 (line 66) as the "Additional child tax credit." The non-refundable portion is credited against the amount of tax owed, providing a taxpayer a dollar-for-dollar decrease in his tax bill.  For example, a taxpayer with a $3,000 tax liability and a $1,000 child tax credit would pay a tax of $2,000.  Since the tax credit is only a credit against tax liability, a taxpayer must have a tax liability in order to use the non-refundable credit.  The amount of the non-refundable credit cannot exceed the amount of tax owed by the taxpayer, and therefore cannot result in a refund to a taxpayer.  In other words, it can only reduce income tax liability to zero.  Any amount of the credit that exceeds the taxpayer's tax liability is essentially lost ( i.e., it is "nonrefundable").

The refundable portion of the child tax credit is not just a credit against tax owed.  If the taxpayer qualifies for the refundable credit, any amount of the credit not used to offset tax liability is still sent to the recipient in the form of a positive payment.  So, the refundable portion of the credit is available where the taxpayer's child tax credit ($1,000 per qualifying child) is greater than his or her tax liability.  A taxpayer need not owe taxes to receive the refundable child tax credit.

The refundable tax credit, unlike the non-refundable credit, is treated as an "overpayment" under the tax code.  Generally speaking, an "overpayment" is any payment made by the taxpayer over and above the tax liability.  Overpayments result when the sum of any "refundable" tax credits, such as repayments, wage withholding, earned income credit or refundable child tax credit, exceed the tax imposed in that year. The tax code provides a mechanism for disbursing overpayments, namely, the income tax refund process. A tax refund essentially represents a repayment by the government to the taxpayer of an overpayment made by the taxpayer.[17]

The vast majority of courts that have addressed the issue of child tax credits have concluded that they should be treated no differently than a debtor's EIC.[18]  The Court agrees with the observation in *In re Law*[19] that "[t]he statutory differences between the [EIC] and the [child tax credit] . . . are significant for tax purposes, but not for bankruptcy purposes."[20]

---

[17]*Id*. at 1-2 (internal citations and quotations omitted).

[18]*See, e.g. In re Law*, 336 B.R. 780 (8th Cir. BAP 2006) and *In re Minton*, 348 B.R. 467, 473-75 (Bankr. S.D. Ohio 2006).

[19]336 B.R. at 783.

[20]*Id.*

9

The Court finds that the treatment of the child tax credit as an overpayment of taxes, in the same manner as the EIC is treated, necessitates a finding in favor of the Trustee. Debtors contend that because their second child was not born until after the petition was filed, any portion of the tax refund attributable to the child tax credit on that child should be considered a post-petition asset of Debtors, and not an asset of the estate.[21] Were the child tax credit treated simply as some sort of payment given to Debtors following the birth of their child, or if the IRS pro-rated the amount of the credit based upon the child's date of birth, Debtors' argument would be more attractive. The IRS, however, treats the additional child tax credit (the refundable portion of the tax credit) as an overpayment of the entire 2008 tax year. Because Debtors had two children in 2008 (regardless of when they were born), they were entitled to a refund of what amounts to an overpayment of their taxes due to that child tax credit. The fact that one of the children happened to be born post-petition (and one pre-petition) does not alter the way the credit is treated.

As a refund of an overpayment of taxes, not attributable to any amount that Debtors themselves paid into the IRS through either withholdings or estimated tax payments, the child tax credit is to be treated the same as any other overpayment. It must be divided between the estate and Debtors on a pro-rata bases from the date the petition was filed.

### C. Food Sales Tax Refund

The final issue regards that portion of the Kansas income tax refund that represents the Kansas Food Sales Tax refund. On October 7, 2009, Debtors filed an amended Schedule C, claiming

---

[21] The Court doubts Debtors would be making the same argument had the child been born in January, which would result in nearly the entire amount of this credit being considered a pre-petition asset under Debtors' theory. In fact, applying Debtors' logic in this case, the Trustee could argue that he is entitled to 100% of the child tax credit attributable to Debtors' first child, since that child was born pre-petition. In other words, if Debtors were allowed to keep all of the credit for the second child because that child was born post-petition, it would only be logical to allow the Trustee to collect all of the credit for the first child because that child was born pre-petition.

10

that the $156.00 Kansas Sales Tax refund is exempt pursuant to 11 U.S.C. § 522(d)(1)(A).[22] According to Debtors, this portion of their refund constitutes a "local public assistance benefit" and is, therefore, exempt.

The Trustee has elected not to pursue its objection to this claimed exemption because the amount the estate would benefit from this refund is so small.[23] Because the Trustee no longer seeks turnover of this amount, the Court need not decide the issue. Therefore, Debtors will be allowed to claim the Kansas Food Sales Tax refund as exempt under 11 U.S.C. § 522(d)(1)(A) based upon the Trustee's decision not to contest the claimed exemption.

## Conclusion

The Court sustains the Trustee's Motion for Turnover of $3,952.40 ($4,015.55 - $103.15), and denies the motion to the extent of the pro-rata portion of the state of Kansas food sales tax refund the Trustee had previously sought, because the Trustee has elected not to pursue that latter amount. The Court believes this decision is not only the legally correct result, but it is also the most administratively practical result. As the Trustee correctly notes, and even Debtors acknowledge, attempting to allocate tax refunds based upon any method other than a pro-rata basis would likely cost the respective parties, including the estate and the debtors, more in attorney fees than the amount in dispute.

It would also place an enormous strain on the Court, the trustees and debtors' counsel to have to litigate each of these cases, which would undoubtedly be full of speculative evidence and ever-shifting positions taken by the parties (as is evident here with the same counsel for two different

---

[22]Doc. 40.

[23]The estate's portion, if sustained, would only be $103.15.

11

debtor clients taking opposite legal positions).  Although interests of judicial economy cannot override clear provisions of the Bankruptcy Code, the Court finds that when judicial economy and logical interpretations of the Code intersect, as is the case here, more often than not the proper decision has been reached.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Motion for Turnover is granted, in part, and denied, in part.  Debtors are ordered to turnover $3,952.40 from their 2008 federal and state tax refunds.

# # #